FREDRIC J. GROSS
Fredric J. Gross Law Firm
Seven East Kings Highway
Mount Ephraim, NJ   08059
(856) 931-1511

WILLIAM H. BUCKMAN
William Buckman Law Firm
110 Marter Avenue -- Suite 209
Moorestown, NJ   08057
(856) 608-9797

Attorneys for Alexandra Chavarriaga

| | | |
|---|---|---|
| ALEXANDRA CHAVARRIAGA,<br>individually and on behalf of<br>all others similarly situated,<br><br>　　Plaintiff,<br><br>　　-versus-<br><br>STATE OF NEW JERSEY<br>DEPARTMENT OF CORRECTIONS;<br>JEFFREY S. CHIESA, INDIVIDUALLY<br>AND AS ATTORNEY GENERAL OF NEW<br>JERSEY; GARY M. LANIGAN,<br>INDIVIDUALLY AND AS NEW JERSEY<br>COMMISSIONER OF CORRECTIONS;<br>GREG BARTKOWSKI INDIVIDUALLY AND<br>AS ADMINISTRATOR OF NEW JERSEY<br>STATE PRISON; CORRECTIONS<br>SERGEANT BROWN; JOHN DOE #1;<br>JOHN DOE #2; and JANE DOE;<br><br>　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | UNITED STATES DISTRICT COURT<br>　DISTRICT OF NEW JERSEY<br><br><br>DOCKET 3:12-cv-04313-MAS-TJB |

----------------------------------X

**INDIVIDUAL AND CLASS ACTION AMENDED COMPLAINT WITH JURY DEMAND**

Alexandra Chavarriaga, for her amended individual and class action complaint against the defendants, asserts:

AMENDED COMPLAINT                                                    page 2

## INTRODUCTORY STATEMENT

"Sunlight is said to be the world's best disinfectant," Justice Brandeis wrote in *Other People's Money* 62 (1933). Plaintiff, by this Amended Complaint, seeks to bring some sunlight into the New Jersey Department of Corrections ("DoC"), and in particular, the Psychiatric Section at New Jersey State Prison (formerly Trenton State Prison), where unconscionable maltreatment of prisoners has heretofore escaped disinfection.

## JURISDICTION

1. The original Complaint, filed in the Superior Court of New Jersey, Mercer County at Docket No. L-1264-42, was removed by defendants to this Court on the basis of federal question jurisdiction.

2. Plaintiff does not dispute the validity of the removal, although she wonders why a unit of the State of New Jersey prefers not to defend in a New Jersey State court.

3. **Alexandra Chavarriaga**, plaintiff herein, is a female of Hispanic heritage presently confined at Edna C. Mahan Correctional Facility, Clinton, New Jersey.

4. Ms. Chavarriaga suffers from PTSD ever since she was raped by her then-employer, whose business supposedly is the victim of the economic crimes for which plaintiff is confined.

5. On August 27, 2011, plaintiff, by her attorney, submitted a timely Notice of Tort Claim to the Tort Claims Section, Department of the Treasury, Division of Risk Management.

6. More than half a year has passed since submission of the Notice of Tort Claim without any response to the Notice of Tort Claim.

## THE PARTIES

7. Plaintiff **Alexandra Chavarriaga** is serving a sentence of confinement adjudged by the Superior Court of New Jersey, Criminal Division, Somerset County.

8. Ms. Chavarriaga is also the plaintiff in a federal law suit, <u>Chavarriaga v. Fodor</u>, No. 3:10-CV-05370 in the District of New Jersey, against certain Somerset County Prosecutor's Detectives and others, relating to the unprovoked brutal beating of Ms. Chavarriaga immediately before Somerset County Prosecutor's Detectives executed search and arrest warrants. That unprovoked beating caused Ms. Chavarriaga to suffer a concussion, partial permanent loss of hearing, a split molar and a chipped molar, as well as multiple bruises and pain.

9. Defendant **State of New Jersey Department of Corrections** ("DoC") is a component of the Executive Branch of the government of the State of New Jersey.

10. Defendant **Jeffrey S. Chiesa, the Attorney General of New Jersey,** is the highest law enforcement official of New Jersey, and is duty-bound to curtail and prosecute egregious abuses of prisoners. **Defendant Chiesa** is sued individually and in his official capacity under 42 U.S.C. § 1343(a)(2) as a "person who fail[ed] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

11.  Defendant **Gary M. Lanigan is the New Jersey Commissioner of Corrections.**  He is in charge of all DoC functions and has supervisory authority over all personnel employed by the DoC and all matters arising within the DoC.  **Defendant Lanigan** is sued individually for damages under 42 U.S.C. § 1343(a)(2) as a "person who fail[d] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

12.  Defendant **Greg Bartkowski is the past Administrator of New Jersey State Prison** (formerly known as Trenton State Prison) who was in charge of New Jersey State Prison and had supervisory authority over all DoC personnel assigned to New Jersey State Prison and all matters arising within New Jersey State Prison. **Defendant Bartkowski** is sued individually for damages under 42 U.S.C. § 1985 and § 1343(a)(2) as a "person who fail[ed] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

13.  Defendant **Corrections Sergeant Janice Brown** is an employee of the DoC who on May 31, 2011 was assigned to Trenton State Prison and supervised various DoC personnel who were on duty.  **Defendant Brown** is sued individually for damages under 42 U.S.C. § 1983, § 1985, and § 1343(a)(2) as a "person who fail[ed] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

14.  Defendant **John Doe #1**, whose true name is not now known to plaintiff, is a DoC employee who on May 31, 2011 removed plaintiff from Garrett House and then drove a DoC vehicle which transported plaintiff to New Jersey State Prison.  **John Doe #1** is

sued individually for damages under 42 U.S.C. § 1983, § 1985, and § 1343(a)(2) as a "person who fail[ed] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

15.  Defendant **John Doe #2,** whose true name is not now known to plaintiff, is a DoC employee who accompanied John Doe #1 on May 31, 2011, and assisted in removing plaintiff from Garrett House and transporting plaintiff to New Jersey State Prison. **John Doe #2** is sued individually for damages under 42 U.S.C. § 1983, § 1985, and § 1343(a)(2) as a "person who fail[ed] to prevent or to aid in preventing any wrong mentioned in section 1985 of Title 42."

16.  Defendant **Jane Doe,** whose true name is not now known to plaintiff, on May 31, 2012 brutally subjected plaintiff to a simultaneous digital probing of the rectum and vagina while plaintiff was held in New Jersey State Prison.  **Jane Doe** is sued individually for damages under 42 U.S.C. § 1983 and N.J.S.A. 10:6-2.c.

## PART 1:  PLAINTIFF'S INDIVIDUAL CLAIMS FOR DAMAGES

### THE FACTS

17.  The DoC is responsible for knowing the whereabouts of its prisoners.  To effectuate this essential requirement of any prison system, certain paperwork is required in order to transfer a prisoner from one DoC facility to another.

18. Corrections personnel are not allowed to transfer a prisoner from one DoC facility to another unless they first obtain the required paperwork.

19. In April 2010, Ms. Chavarriaga had been removed from Garrett House for two alleged infractions of DoC Rules.

20. At that time, she was transported to New Jersey State Prison and held overnight, naked, in a cell in the Psychiatric Unit where she could be and was observed by anyone who happened to pass by.

21. The former Administrator of New Jersey State Prison, Michelle Ricci, is well aware that on those occasions when women were confined in that facility, the women often were subjected to outrageous indignities. Specifics were related in filings in Kathleen Jones v. George Hayman, Docket No. C-123-07, Mercer County Chancery Division, concerning the Women's Section that was once housed at New Jersey State Prison.

22. Furthermore, on May 2, 2010, one of plaintiff's attorneys faxed to Administrator Ricci the following text (boldface in original):

> I am the attorney for Alexandra Chavarriaga. At the moment she is housed at Edna C. Mahan Correctional Facility in Clinton. Her father advised me today that she has been told she will be shipped to Trenton on or about Thursday, May 6, 2010.

> Ms. Chavarriaga was raped by the supposed victim of the crimes for which she has been convicted. As a result of that rape, she suffers from PTSD.

> During April [2010], she was summarily removed from Garrett House and charged with two disciplinary infractions on which she was acquitted at Clinton.

Before reaching Clinton, Ms. Chavarriaga first was transported from Garrett House in Camden to your facility. Her father tells me that in Trenton she was detained in a cell without clothing for the better part of two days before being shipped back to Clinton. Needless to say, prolonged unclothed exposure to anybody who happens to walk by is wholly inappropriate, especially for a rape victim suffering from PTSD. That mistreatment likely aggravated the PTSD.

**Please make certain there is no repetition of unclothed exposure beyond the minimal demands of security should Ms. Chavarriaga be housed in your facility later this week.**

Thank you for your anticipated cooperation.

23. Neither Administrator Ricci nor anybody acting on her behalf ever responded to this May 2, 2010 faxed letter.

## A. Denials of equal protection and due process of law entailing kidnap, rape, torture, false confinement, and cruel and unusual punishment

24. Subsequently, plaintiff was again assigned to Garrett House, a halfway house in Camden, New Jersey.

25. New Jersey prisoners assigned to a halfway house are only returned to closed custody, i.e., a prison, if charged with a violation of a DoC Regulation.

26. Although Alexandra Chavarriaga had not been accused of violating any DoC Regulation, late in the day on May 31, 2011, **John Doe #1** and **John Doe #2** came to Garrett House, informed management that they were returning Ms. Chavarriaga to closed custody, put Ms. Chavarriaga in leg shackles and compelled her to accompany them to their DoC vehicle.

27.   There was no legitimate reason or justification for removing Ms. Chavarriaga from Garrett House; no violation of DoC regulations has ever been asserted; and no order has ever been produced directing or authorizing **John Doe #1** and **John Doe #2** to remove Ms. Chavarriaga from her proper place of confinement, Garrett House.

28.   The most reasonable explanation for wrongfully removing Alexandra Chavarriaga from Garrett House on May 31, 2011 was in retaliation for her suing the Somerset County Prosecutor's Detectives who had beaten Ms. Chavarriaga without provocation or justification.

29.   **John Doe #1** accompanied by **John Doe #2** proceeded to drive Ms. Chavarriaga in the DoC vehicle to New Jersey State Prison.

30.   Upon arrival at New Jersey State Prison, **John Doe #1** or **John Doe #2** informed **Corrections Sergeant Brown** that they were returning Ms. Chavarriaga to closed custody.

31.   **Corrections Sergeant Brown** asked **John Doe #1** and **John Doe #2** for the paperwork required to transfer Ms. Chavarriaga to closed custody.

32.   **John Doe #1** or **John Doe #2** told **Corrections Sergeant Brown** that they had no paperwork.

33.   Removing Ms. Chavarriaga from Garrett House under these circumstances constituted kidnapping.

34.   **Corrections Sergeant Brown** responded with a direction for **John Doe #1** and **John Doe #2** to take the prisoner back to where they found her.

**AMENDED COMPLAINT**

35.    John Doe #1 or John Doe #2 refused to do so, stating that they were not putting in overtime.

36.    Corrections Sergeant Brown, instead of instituting disciplinary measures against John Doe #1 or John Doe #2 for violating DoC requirements and for insubordination, told John Doe #1 and John Doe #2 to give the prisoner to Brown and she (Brown) would get the situation straightened out.

37.    Corrections Sergeant Brown excused John Doe #1 and John Doe #2 and then had plaintiff brought inside New Jersey State Prison.

38.    New Jersey State Prison is a maximum security facility for male prisoners.  It has no unit for housing female prisoners.

39.    Although for a time New Jersey State Prison had a unit for female inmates, this unit closed down shortly after female inmates brought a class action suit, <u>Jones v. Hayman</u>, <u>supra</u>, complaining of atrocious living conditions and sexual harassment.

40.    Although Corrections Sergeant Brown is not a licensed mental health practitioner, Brown decided to house Ms. Chavarriaga in a cage-like cell in the Psychiatric Section of New Jersey State Prison, NJSP South-1-GG-Cell 12.

41.    No mental health professional had examined Ms. Chavarriaga, let alone determined that it would be appropriate to confine Ms. Chavarriaga in the Psychiatric Section.

42.    At the direction of Corrections Sergeant Brown, Ms. Chavarriaga, still wearing leg shackles, was escorted to the Psychiatric Section and placed in a cage-like cell, NJSP South-1-GG-Cell 12.

43.  **Corrections Sergeant Brown** then ordered all of Ms. Chavarriaga's clothing removed, whereupon Ms. Chavarriaga's clothing was taken from her.

44.  Ms. Chavarriaga was confined in NJSP South-1-GG-Cell 12, naked and shackled, from May 31, 2011 until Thursday, June 2, 2011.

45.  Following plaintiff's May 31, 2011 arrival at New Jersey State Prison, a female staff person, **Jane Doe**, on the pretext of searching for drugs (Ms. Chavarriaga has never used unlawful drugs), entered NJSP South-1-GG-Cell 12 and conducted a simultaneous digital probing of the naked Ms. Chavarriaga's rectum and vagina.

46.  Inasmuch as Ms. Chavarriaga had been kidnapped and was falsely confined at New Jersey State Prison, there was neither justification for nor any right to conduct that digital probing of Ms. Chavarriaga's rectum and vagina.

47.  Put differently, **Jane Doe** raped Ms. Chavarriaga.

48.  During that rape, the pain endured by Ms. Chavarriaga forced her to clench her teeth with so much strength that she split in two the molar which had been cracked when Prosecutor's Detectives brutally beat Ms. Chavarriaga without provocation in October 2008.

49.  Throughout this three-day period of confinement in the Psychiatric Section, whenever Ms. Chavarriaga requested a drink of water, she was told that she would have to drink the water in the toilet bowl, and no potable drinking water was ever made available to plaintiff.

**AMENDED COMPLAINT**

50. Throughout this three day period of confinement in the Psychiatric Section, Ms. Chavarriaga was menstruating, but was not provided any sanitary napkins or their equivalent. Consequently, menstrual blood continually ran down her legs and onto the floor of NJSP South-1-GG-Cell 12.

51. Included in the paperwork that the DoC requires be transferred with a prisoner is the prisoner's medical records and medications. Nevertheless, throughout this period of confinement in the Psychiatric Section, Ms. Chavarriaga was denied her usual medications for headaches and menstrual cramps for the stated reason that prison staff had no paperwork and therefore could not verify that the medications Ms. Chavarriaga requested were allowed and appropriate.

52. Throughout this period of confinement in the Psychiatric Section, male staff and prisoners were allowed to observe and stare at Ms. Chavarriaga, who was kept naked.

53. Ms. Chavarriaga remained in the cage-like NJSP South-1-GG-Cell 12 until Thursday, June 2, 2011, when Ms. Chavarriaga was invited to take a shower for the first time since her arrival at New Jersey State Prison.

54. In order to get to the shower, Ms. Chavarriaga was required to walk down a spiral staircase and then down a hallway, naked and shackled, in plain view of male prisoners and staff.

55. The continuing torture of Ms. Chavarriaga at New Jersey State Prison came to an end only when she was given clothes and transported to New Jersey's prison for women, the Edna C. Mahan

Correctional Facility in Clinton, on June 2, 2011, arriving after dark.

56. Once again, the DoC employee transporting Ms. Chavarriaga did not have the required paperwork for transferring a prisoner. When told that Edna C. Mahan Correctional Facility would not take in Ms. Chavarriaga without the required paperwork, the driver removed Ms. Chavarriaga from the car and told his interlocutor that the prisoner was no longer the driver's responsibility.

57. The next morning, Ms. Chavarriaga was interviewed at some length by the Edna C. Mahan Correctional Facility prison nurse. The nurse apologetically explained that the prolonged questioning was necessary because there was no paperwork.

58. Ms. Chavarriaga was kept over the weekend at Edna C. Mahan Correctional Facility.

59. On Monday, June 6, 2011, Ms. Stephanie Reyes, a Garrett House employee, arrived at the women's prison and drove Ms. Chavarriaga back to Garrett House.

60. Ms. Lauren Barone, Assistant Director of Garrett House, wrote on June 7, 2011 (emphasis added):

> This letter is to confirm that Alexandra Chavarriaga was returned to closed custody on May 31, 2011 <u>**due to an error on the prison's part**</u>. She was returned to Garrett House on June 6, 2007.

61. As a result of the forgoing, plaintiff **Alexandra Chavarriaga** has suffered physical pain, a broken tooth, extreme emotional distress, humiliation, a morbid fear of future

confinements at New Jersey State Prison, and a likely exacerbation of her pre-existing PTSD.

## B.   Confinement in a psychiatric unit without mental health screening

62.   Plaintiff repeats all of the foregoing.

63.   The Department of Corrections policy is to require a mental health assessment before transferring any inmate into a psychiatric unit.

64.   Plaintiff has been confined in a New Jersey State Prison psychiatric unit on three separate occasions.  Specifically, plaintiff was first confined over night in New Jersey State Prison on April 7, 2010.  Plaintiff was next confined in New Jersey State Prison from May 31, 2011 through June 2, 2011.  Finally, plaintiff was confined in New Jersey State Prison on December 22-23, 2011.  On all three occasions, plaintiff was confined in NJSP South-1-GG-Cell 12, which is within the Psychiatric Section of the prison.

65.   On no occasion of plaintiff being confined in the New Jersey State Prison Psychiatric Section, NJSP South-1-GG-Cell 12, had there been any prior determination by a mental health practitioner that plaintiff, by reason of a mental health disorder, presented a danger to herself, other inmates, Corrections staff, or the maintenance of prison order.

66.   Such confinement denied plaintiff the equal protection of the law and due process of law within the intendment of 42 U.S.C. § 1983.

67. As a result of the foregoing, plaintiff has been humiliated and discomfited.

### C.   Deprivation of clothing

68. Plaintiff repeats all of the foregoing.

69. DoC policy forbids keeping a prisoner naked for prolonged periods of time, but in April 2010, and again beginning on May 31, 2011 and continuing into June 2, 2011, plaintiff was confined naked in New Jersey State Prison.

70. Moreover, in order to obtain a shower after being held naked for three days, plaintiff was forced to parade naked in shackles where male staff and inmates saw her and commented on her naked body.

71. As a result of the foregoing, plaintiff has been humiliated and discomfited, her privacy interests have been violated, and she has been denied due process of law and the equal protection of the law.

### D.   Confinement without access to potable water

72. Plaintiff repeats all of the foregoing.

73. During the two confinements plaintiff suffered at New Jersey State Prison beginning on May 31, 2011 and beginning on December 22, 2011, plaintiff was required to obtain drinking water from a toilet bowl whenever she was thirsty, or else do without water.

74. There was no justification for withholding potable water from plaintiff.

75. The withholding of potable water on December 22-23, 2011 proximately caused plaintiff's inability to produce a sufficient amount of urine for testing, according to Corrections staff.

76. Plaintiff's inability to produce urine resulted in a Courtline conviction with a punishment of no contact visits for at least one year.

77. Depriving plaintiff of potable water constituted cruel and unusual punishment in violation of the United State Constitution, Amendments 8 and 14; in violation of Article 1, ¶ 12, New Jersey Constitution; and 42 U.S.C. § 1983, and in violation of N.J.S.A. 10:6-2.c.

78. As a result of the foregoing, plaintiff suffered emotional distress, humiliation, and prolonged deprivation of contact visits with her family.

## INDIVIDUAL CAUSES OF ACTION

79. Based upon all of the foregoing:

A. As and for a First Cause of Action, defendants **Corrections Sergeant Brown, John Doe #1, John Doe #2**, and perhaps others unknown to plaintiff at this time, without lawful authority, conspired, confederated, agreed to and did kidnap plaintiff **Alexandra Chavarriaga** from Garrett House, and removed her to New Jersey State Prison, a maximum security prison for men only, where she was falsely confined in violation of her constitutional entitlement to substantive due process of law, thereby violating N.J.S.A. 10:6-2.c, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

**AMENDED COMPLAINT**                                                    page 16

B.    As and for a Second Cause of Action, defendant **Corrections Sergeant Brown**, aided and abetted by subordinates whose identities are unknown to plaintiff at this time, forced plaintiff **Alexandra Chavarriaga** to be held in the Psychiatric Section of New Jersey State Prison, a maximum security prison for men only, in the absence of any examination and report by a licensed mental health professional indicating that by reason of a psychiatric disorder plaintiff presented a danger to herself, to other inmates, or to Corrections personnel; thereby depriving plaintiff of substantive due process and imposing on plaintiff cruel and unusual punishment in violation of the New Jersey Constitution and N.J.S.A. 10:6-2.c, and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

C.    As and for a Third Cause of Action, defendant **Corrections Sergeant Brown**, aided and abetted by subordinates whose identities are unknown to plaintiff at this time, forced plaintiff **Alexandra Chavarriaga** to be held without clothing at New Jersey State Prison, a maximum security prison for men only, where Corrections personnel and inmates were free to gawk at and to comment offensively about plaintiff's nakedness, thereby imposing on plaintiff denial of due process of law, denial of equal protection of the law, invasion of privacy, and cruel and unusual punishment in violation of New Jersey Constitution Art. 1, ¶ 12 and N.J.S.A. 10:6-2.c, and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

AMENDED COMPLAINT                                              page 17

D.   As and for a Fourth Cause of Action, defendant **Corrections Sergeant Brown**, aided and abetted by subordinates whose identities are unknown to plaintiff at this time, forced plaintiff **Alexandra Chavarriaga** to obtain her drinking water from a dirty toilet bowl, thereby imposing on plaintiff cruel and unusual punishment in violation of the New Jersey Constitution, N.J.S.A. 10:6-2.c, and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

E.   As and for a Fifth Cause of Action, defendant **Jane Doe**, with the purpose of inflicting severe pain and humiliation upon plaintiff, brutally invaded plaintiff's rectum and vagina, thereby technically raping plaintiff, and also invading plaintiff's privacy and imposing on plaintiff cruel and unusual punishment in violation of the New Jersey Constitution and N.J.S.A. 10:6-2.c, and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

F.   As and for a Sixth Cause of Action, defendants State of New Jersey, Attorney General, Commissioner of Corrections, and Administrator of New Jersey State Prison, although well aware of some or all of the wrongdoing described above, did nothing to punish the wrongdoers and did nothing to prevent recurrences, thereby approving of the outrageous conduct inflicted upon plaintiff and making themselves co-conspirators, aiders and

abettors of the other individual defendants, in violation of the New Jersey Constitution, Art. 1, ¶¶ 1,12, and N.J.S.A. 10:6-2.c, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1343(a)(2).

**Wherefore**, plaintiff demands the following relief:

A.  A permanent injunction enjoining the State of New Jersey DoC, its employees and agents, from ever confining plaintiff, even on a temporary basis, in New Jersey State Prison or other DoC facility designed to house only male inmates, except after a demonstration of good cause in an adversary proceeding in this Court or another court of competent jurisdiction.

B.  Emotional distress damages from defendants, jointly and severally.

C.  Punitive damages individually from each named defendant.

D.  An Order establishing a Medical Needs Trust Fund for the benefit of plaintiff, to be used first for diagnosis and treatment of the psychiatric injury inflicted on plaintiff by defendants, with remainder to be used for other medical needs of plaintiff; together with an injunction compelling the transfer into this Medical Needs Trust Fund of all accrued New Jersey-sponsored pension or retirement interests held by defendants Lanigan, Corrections Sergeant Brown, John Doe 1, John Doe 2, and Jane Doe.

E.  Costs including attorney fees.

F.  Prejudgment interest.

G.  Such other and further relief as may be warranted in the circumstances, including an injunction against reprisals.

**AMENDED COMPLAINT**                                             page 19

## JURY DEMAND

With respect to plaintiff's individual claims sounding at law, plaintiff demands a trial by jury.

### PART 2:   CLASS ACTION ALLEGATIONS AND REMEDIES

80.  Plaintiff repeats the foregoing.

81.  Ms. Chavarriaga seeks, on behalf of herself and all present and future inmates in the custody of the New Jersey Commissioner of Corrections, permanent injunctions:

A.  Requiring the State of New Jersey DoC, its employees and agents, to provide sanitary bottled drinking water to any inmate confined in circumstances where the only water otherwise available to the inmate must be drawn from a toilet bowl;

B.  Enjoining the State of New Jersey DoC, its employees and agents, from confining any inmate in a Psychiatric Section, a Psychiatric Unit, or in any facility intended for prisoners with mental health disorders, except if there has been a recent mental health evaluation by a licensed mental health practitioner who makes written findings that by reason of a psychiatric disease or disorder, the prisoner presents a substantial danger to self, other prisoners, or Corrections staff;

C.  Enjoining the State of New Jersey DoC, its employees and agents, from ever confining any female inmate naked, in a Prison or other DoC facility, except upon a written

determination of medical need by a physician licensed to practice medicine in New Jersey; and

D.   Enjoining the State of New Jersey DoC, its employees and agents, from ever confining any female inmate, even on a temporary basis, in New Jersey State Prison or other DoC facility designed to house only male inmates, except after a demonstration of good cause in an adversary proceeding in this Court or in another court of competent jurisdiction.

**Class Count 1.   Forcing Inmates to Drink Water from Toilet Bowls**

82.   Plaintiff repeats all of the foregoing.

83.   Plaintiff sues on behalf of herself and all present and future New Jersey prisoners who have been or will be placed in so-called "dry cells" where they are required to obtain drinking water from toilet bowls.

84.   Water pipes have been installed in some DoC prison cells, called "dry cells," with remote turn-offs of the wash basin feeds.  Those turn-offs are readily accessible to custodial staff.  Those turn-offs are intended to be used solely to prevent inmates from intentionally overflowing the wash basin and flooding the facility.

85.   Those turn-offs are often abused by DoC staff so as to humiliate inmates or to impose unauthorized but outrageous punishment, by forcing inmates to drink water from the toilet bowls in their respective cells.

86.   Those abuses by DoC staff needlessly exposes inmates to disease.

**AMENDED COMPLAINT**                                                page 21

87.  Although well aware that DoC staff abuse their authority by turning off water to prisoners' wash basins without provocation, the **Administrator of New Jersey State Prison**, the **Commissioner of Corrections**, and the **Attorney General of New Jersey**, have failed to terminate the practice of forcing inmates to obtain drinking water from toilet bowls.

88.  The class described above presents common questions of law, namely, (1)  Whether forcing prisoners to drink water drawn from toilet bowls violates Article 1, ¶ 12, of the New Jersey Constitution which proscribes imposition of cruel and unusual punishment?  (2)  Whether forcing prisoners to drink water drawn from toilet bowls deprives prisoners of substantive due process of law, in violation of N.J.S.A. 10:6-2.c? (3)  Whether forcing prisoners to drink water drawn from toilet bowls violates the Eight Amendment (proscribing cruel and unusual punishment) and Fourteenth Amendment (making the Eighth Amendment applicable to the States as a matter of due process) to the United States Constitution?

## Class Count 2.  Wrongful Psychiatric Confinement

89.  Plaintiff repeats all of the foregoing.

90.  Based upon her three periods of confinement within the New Jersey State Prison Psychiatric Section in NJSP South-1-GG-Cell 12 during 2010 and 2011, plaintiff believes and avers that prisoners have been, are, and will be routinely confined in the New Jersey State Prison Psychiatric Section without any

justifying mental health evaluation; and absent the relief sought in this Complaint, many prisoners in the future will suffer the same wrong.

91. The class described above presents common questions of law, namely, (1) Is it a denial of due process of law to place prisoners in a Psychiatric Section without any justifying mental health evaluation? (2) Is confinement in a Psychiatric Section without any justifying mental health evaluation a form of cruel and unusual punishment in violation of Article 1, ¶ 12, New Jersey Constitution? (3) Is confinement in a Psychiatric Section without any justifying mental health evaluation a violation of N.J.S.A. 10:6-2.c? (4) Is it arbitrary and capricious, an abuse of discretion, and/or contrary to law to place prisoners in a Psychiatric Section without any justifying professional mental health evaluation?

### Class Count 3. Confining Female Inmates Unclothed

92. Plaintiff repeats all of the foregoing.

93. Plaintiff sues on behalf of herself and all present and future female New Jersey prisoners who have been or will be confined for any reason in any New Jersey prison.

94. DoC policy forbids keeping a prisoner naked for prolonged periods of time, but in April 2010, and again beginning on May 31, 2011 and continuing into June 2, 2011, plaintiff was confined naked in New Jersey State Prison.

**AMENDED COMPLAINT**                                    page 23

95.  The class described above presents common questions of law, namely, (1)  Whether depriving female prisoners of their clothing without just cause violates the New Jersey Constitution's protection against cruel and unusual punishment? (2)  Whether depriving female prisoners of their clothing without just cause denies the prisoners substantive due process in violation of N.J.S.A. 10:6-2.c?  (3) Whether compelling prisoners to drink water drawn from toilet bowls violates the Eight Amendment (proscribing cruel and unusual punishment) and Fourteenth Amendment (making the Eighth Amendment applicable to the States as a matter of due process) to the United States Constitution?

## Class Count 4.  Confining Female Inmates at NJSP

96.  Plaintiff repeats all of the foregoing.

97.  Plaintiff sues on behalf of herself and all present and future female New Jersey prisoners who have been or will be confined for any reason in New Jersey State Prison.

98.  Plaintiff has been confined in New Jersey State Prison on three separate occasions.  Specifically, in addition to the confinement which commenced on May 31, 2011, and the confinement in New Jersey State Prison on December 22-23, 2011, plaintiff had been confined over night in New Jersey State Prison in or about April 2010.

99.  Additionally, in <u>Kathleen Jones v. George Hayman</u>, females in the former women's unit at New Jersey State Prison complained of ongoing sexual harassment.

100. The class described above presents common questions of law, namely, (1) Whether sexual harassment of female prisoners by New Jersey State Prison staff violates the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq? (2) Whether sexual harassment of female prisoners by New Jersey State Prison staff deprives the prisoners of substantive due process in violation of N.J.S.A. 10:6-2.c? (3) Whether confining female prisoners in New Jersey State Prison or any other DoC facility intended only for male prisoners presents an unreasonable and unavoidable risk of sexual harassment, in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq?

## CLASS REQUIREMENTS

101. Plaintiff is a member of each class and the wrongs of which she complains are, by class definition, typical of each class.

102. There are thousands of prisoners confined in New Jersey prisons, including hundreds of female prisoners. The female prisoners are normally confined at Edna C. Mahan Correctional Facility or at various halfway houses. Thus the number of members of each class is substantial. Because the class membership of each class is fluid, joinder of all class members would be impracticable. Proceeding by class action is therefore the most practical way to resolve the disputed practices universally.

103. Plaintiff seeks appropriate injunctive relief which would protect the interests of the absent class members.

AMENDED COMPLAINT

104. By undertaking this litigation and risking reprisals, plaintiff demonstrates that she will faithfully represent the interests of the other members of the class.

105. Plaintiff's counsel Fredric J. Gross has substantial class action experience.

106. Plaintiff seeks certification of each class under Rule 23(b)(2).

## CLASS REMEDIES

107. With respect to the first class described above, a permanent injunction should issue requiring the State of New Jersey DoC, its administrators, employees and agents, to provide sanitary bottled drinking water to any inmate confined in circumstances where the only water otherwise available to the inmate must be drawn from a toilet bowl.

108. With respect to the second class described above, a permanent injunction should issue enjoining the State of New Jersey DoC, its administrators, employees and agents, from confining any inmate in a Psychiatric Section, a Psychiatric Unit, or in any facility intended for persons with mental health disorders, except if there has been a recent mental health evaluation by a licensed mental health practitioner who makes written findings that by reason of a psychiatric disease or disorder, the prisoner presents a substantial danger to self, other prisoners, or Corrections staff.

**AMENDED COMPLAINT**                                                      page 26

109.  With respect to the third class described above, a permanent injunction should issue enjoining the State of New Jersey DoC, its administrators, employees and agents, from withholding clothing from any female inmate, except for medical reasons, in any location where the female inmate can be viewed by male Corrections staff or inmates.

110.  With respect to the fourth class described above, a permanent injunction should issue enjoining the State of New Jersey DoC, its administrators, employees and agents, from confining any female inmate, even on a temporary basis, in any New Jersey State Prison or other DoC facility designed to house only male inmates, except upon a prior judicial finding at an adversarial hearing of good cause.

111.  Additionally, this Court should appoint an independent ombudsman, at DoC expense, with authority to do all things reasonable or necessary to verify compliance with this Court's injunctive relief, and to report to the Court and counsel at regular intervals to be determined by the Court, the extent of compliance or non-compliance with the injunction.

112.  An award of costs including attorney fees.

113.  Such other and further relief as is appropriate.

AMENDED COMPLAINT

page 27

## TRIAL COUNSEL DESIGNATION

Attorney William H. Buckman is hereby designated trial counsel in this matter.

/s/
FREDRIC J. GROSS

/s/
WILLIAM H. BUCKMAN

August 24, 2012.