**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| ALEXANDRA CHAVARRIAGA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 12-4313 (MAS) |
| | : | |
| v. | : | |
| | : | |
| STATE OF NEW JERSEY, | : | |
| DEPARTMENT OF CORRECTIONS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**APPEARANCES:**

**FREDERIC J. GROSS, ESQUIRE**          **WILLIAM H. BUCKMAN, ESQ.**
7 East Kings Highway                               110 Marter Avenue, Suite 209
Mt. Ephraim, New Jersey 08059          Moorestown, New Jersey 08057

Counsel for Plaintiff

**DANIEL MICHAEL VANNELLA, ESQ.**
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY
Division of Law
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey   08625

        - and –

**DIANNE M. MORATTI, ESQ.**
OFFICE OF N.J. ATTORNEY GENERAL
R.J. Hughes Justice Complex
CN 112
Trenton, New Jersey 08625
Counsel for Defendants: New Jersey Department of Corrections, Jeffrey S. Chiesa, Gary M.
Lanigan, and Corrections Sergeant Brown

**SHIPP, District Judge**

Presently before the Court is a motion filed on behalf of Defendants Jeffrey S. Chiesa, Gary M. Lanigan, and Sergeant Brown, seeking to dismiss Plaintiff's Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively for summary judgment under Fed.R.Civ.P. 56. (ECF No. 57.)   Plaintiff thereafter filed a cross-motion for class certification, partial summary judgment and attorney sanctions.   (ECF No. 70.)   The parties have filed opposition to the various motions as well as reply briefs in support of their own motions.   These motions are decided on the papers, without oral argument, pursuant to *Federal Rule of Civil Procedure* 78.   For the reasons set forth below, the Court grants summary judgment in favor of Defendants, Chiesa, Lanigan and Brown.   Moreover, the Complaint is dismissed in its entirety, as against all remaining named and unidentified Defendants, for failure to state a cognizable claim of a constitutional deprivation that would entitle Plaintiff to relief.   Finally, the Court denies Plaintiff's cross-motion for partial summary judgment and attorney sanctions for lack of merit, and denies Plaintiff's cross-motion for class certification as moot.

## I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

On May 18, 2012, Plaintiff Alexandra Chavarriaga ("Plaintiff" or "Chavarriaga"), filed a civil rights complaint in the Superior Court of New Jersey, Law Division, Mercer County, against Defendants the New Jersey Department of Corrections ("NJDOC"); Jeffrey Chiesa, Attorney General of the State of New Jersey; Gary M. Lanigan, NJDOC Commissioner; Greg Bartkowski, Administrator at New Jersey State Prison ("NJSP"); Corrections Sergeant Brown; John Doe #1 and #2, (NJDOC employees who removed Chavarriaga from the Garrett House and transported

her to NJSP on May 31, 2011); and Jane Doe, a NJDOC officer who allegedly subjected Plaintiff to a cavity search at NJSP on May 31, 2011.   On July 12, 2012, Defendants Chiesa, Lanigan and Brown removed the action to this District Court.   (ECF No. 1.)   On August 15, 2012, the Honorable Tonianne J. Bongiovanni, U.S.M.J., entered an Order giving Plaintiff leave to file an amended Complaint by August 24, 2012, and Defendants were directed to answer, move or otherwise reply to the amended Complaint by September 21, 2012.   (ECF No. 11.)   Plaintiff filed her first amended Complaint on August 24, 2012.   (ECF No. 13.)   On September 24, 2012, Defendants Greg Bartkowski, Jeffrey S. Chiesa, Sgt. Brown and Gary M. Lanigan, filed a motion to dismiss the amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively for summary judgment, as well as a motion to seal documents. (ECF Nos. 15, 16, 17.)   The motion to seal was granted by Judge Bongiovanni on October 24, 2012.   (ECF No. 21.)

On March 24, 2013, Plaintiff's attorney filed a motion to certify the class under Fed.R.Civ.P. 23(b)(2).   (ECF No. 34.)   In the motion, Plaintiff indicated that she would be seeking leave of court to file a second amended Complaint.   (*Id.*)   On April 12, 2013, following a status conference call with the parties' counsel, Judge Bongiovanni issued a letter Order giving Plaintiff until May 10, 2013 to file her second amended Complaint.   The Order also terminated the Defendants' motion to dismiss and/or for summary judgment and Plaintiff's motion to certify class, in light of recent discovery rulings.   (ECF No. 42.)

The second amended Complaint eventually was filed on August 15, 2013.   (ECF No. 56, Revised Second Amended and Supplemental Complaint.)   Plaintiff voluntarily dismissed Defendant Bartkowski from this action, but the second amended Complaint added new Defendants, Marcus Wair, employed in the NJDOC's Special Investigations Division ("SID");

3

Philip Sheppard, NJSP South Command Area Sergeant; John Doe #3 and #4, NJSP South Command Area Sergeants; and various unknown employees of the NJDOC SID.

Defendants then filed this motion to dismiss and/or for summary judgment on August 29, 2013.   (ECF No. 57.)   Plaintiff sought to defer filing a response to Defendants' motion pursuant to Rule 56(d), on the grounds that discovery was necessary.   (ECF No. 58.)   Namely, Plaintiff stated that the depositions of those individuals who provided declarations on behalf of Defendants' motion to dismiss were needed.   These individual declarants are Nya Booth, David Hoffman, and Herbert Kaldany.   (*Id.* at ¶¶ 8, 9.)   Plaintiff also requested the deposition of Ms. Perry of the NJDOC's Office of Program and Community Services, or a "knowledgeable agent regarding the decision-making process" that resulted in Plaintiff's transfer on January 15, 2010, in the event Ms. Perry was no longer employed by the NJDOC.   (*Id.* at ¶¶ 10-12.)   Finally, Plaintiff asked to take the deposition of Defendant Lanigan and Mr. Thomas, the Assistant Director of Garrett House. (*Id.* at ¶¶ 15-17.)

On October 8, 2013, Plaintiff complained that Defendants refused to cooperate with depositions as requested by Plaintiff.   (ECF No. 62.)   A conference call was requested by Defendants but never scheduled.   However, this Court adjourned the Defendants' motion to dismiss and/or for summary judgment (ECF No. 66), and allowed Plaintiff an extension to file a response to Defendants' motion.   (ECF No. 69.)

On December 9, 2013, Plaintiff filed a cross motion to certify class, for partial summary judgment and opposition to Defendants' motion.   (ECF No. 70.)   On January 25, 2014, Defendants filed a reply in support of their motion and opposition to Plaintiff's motion. (ECF No. 75.)   Plaintiff filed a reply on February 18, 2014.   (ECF No. 81.)

4

B.   Complaint Allegations

     This action principally involves alleged civil rights violations by the NJDOC and its agents against Plaintiff, namely infliction of cruel and unusual punishment, and denial of equal protection and due process of law, in violation of 42 U.S.C. §§ 1342(a)(2), 1983, 1986, the United States Constitution, and New Jersey state law, which occurred while Plaintiff was incarcerated temporarily at the New Jersey State Prison ("NJSP") on three separate occasions in 2010 and 2011.

     Plaintiff alleges that the first incident occurred on April 7, 2010, when Plaintiff was removed from the Garrett House (a halfway house) for two alleged infractions of NJDOC rules. Plaintiff was transported from the Garrett House to NJSP, where she was held naked in South-1-GG Cell 12, an area allegedly identified as the Psychiatric Unit.   Plaintiff alleges that she was held for almost two days without clothing, visible in her naked condition to anyone who passed by her cell, before she was returned to the Edna Mahan Correctional Facility ("EMCF") for women in Clinton, New Jersey.   (ECF No. 56, Rev. Sec. Am. Compl. at ¶¶ 23, 24, 26.)

     The second incident occurred on May 31, 2011.   Plaintiff alleges that she was wrongfully removed from the Garrett House on May 31, 2011, without having committed any violations and without any paper work authorizing her removal and transport.   Plaintiff was transported in leg shackles and taken to NJSP, where she was placed in the same cell in NJSP South-1-GG Cell 12. Defendant Corrections Sergeant Brown then ordered that all of Plaintiff's clothing be removed and taken from her, and Plaintiff remained shackled and naked in Cell 12 from May 31, 2011 until June 2, 2011.   (*Id.* at ¶¶ 30, 31, 46, 47, 48.)

     During this second period of confinement at NJSP, Plaintiff alleges that Defendant Jane Doe conducted a painful and unauthorized digital body cavity search of Plaintiff upon her arrival at

NJSP.  (*Id.*, ¶¶ 49-53.)   Plaintiff next alleges that she was confined in Cell 12 for three days with no potable water, and when Plaintiff asked for a drink of water she was told to drink from the water in the toilet bowl in her cell.  (*Id.*, ¶ 54.)  Plaintiff also claims that she was kept naked and exposed in her cell where anyone passing by the cell could see her.   She alleges that she was not permitted to shower until the last day she was at NJSP, on June 2, 2011.   Although there was a shower in the South-1-GG unit, Plaintiff alleges that she was forced to "walk down a spiral staircase to another unit and then down a hallway, naked and shackled, in plain view of male prisoners and staff, to reach a shower."  (*Id.*, ¶¶ 57-59.)   Plaintiff further alleges that she was menstruating during this three-day confinement and was denied any sanitary napkins or other feminine products, and that she was denied her usual medications for migraine headaches and menstrual cramps during this time.  (*Id.*, ¶¶ 55, 56.)

According to Plaintiff, she was returned to Garrett House from the EMCF on June 6, 2011. Ms. Lauren Barone, Assistant Director of Garrett House wrote that Plaintiff had been removed from Garrett House on May 31, 2011 "due to an error on the prison's part."  (*Id.*, ¶¶ 64, 65.) Plaintiff alleges that her removal from Garrett House on May 31, 2011 was a retaliatory act by SID employees connected to Plaintiff's lawsuit against detectives in the Somerset County Prosecutor's Office.  (*Id.*, ¶ 32.)

Plaintiff alleges that she was transported and confined to NJSP South-1-GG Cell 12 for a third time on December 22, 2011 through December 23, 2011.  (Id., ¶ 67.)  Plaintiff contends that her removal from Garrett House for transport to NJSP was based on an allegation that Plaintiff had written false statements in letters accusing others in halfway houses of molesting her child.[1]  (*Id.*,

---

[1]  Plaintiff states that she did not write those letters and she does not have a child.   (Id., ¶¶ 90, 91.)

¶ 89.)   The investigation of this charge and the decision to press NJDOC charges against Plaintiff allegedly was made by Defendant Wair with other unknown SID personnel, purportedly in retaliation against Plaintiff for having sued Somerset County Prosecutor's Office detectives.   (Id., ¶¶ 94, 96.)   Plaintiff alleges that Wair and the other SID personnel knew or should have known that the letters originated with another Garrett House resident.   (*Id.*, ¶ 95.)   After a court line hearing at EMCF, Plaintiff was found not guilty of writing those letters.   (Id., ¶ 98.)   During her third confinement at NJSP, Plaintiff again alleges that she had no access to potable water.

Plaintiff alleges that before she was first confined at NJSP in South-1-GG unit Cell 12, the cell had been "condemned" by the NJDOC because the cold water faucet in the wash basin was broken.   She further claims that the faucet and plumbing were not repaired before January 2012. Plaintiff contends that the SID made a decision not to repair the faucet and plumbing in South-1-GG unit Cell 12 so as to reserve that cell as "a torture cell for disfavored inmates."   (*Id.*, ¶¶ 68-70.)   Plaintiff claims that she was deemed a disfavored inmate by the SID because Plaintiff had sued Somerset County Prosecutor's Office detectives for brutality and use of excessive force in their arrest of Plaintiff in October 2008.[2]   (*Id.*, ¶ 71.)

C.   Summary Judgment Evidence

In support of their motion for summary judgment, Defendants provide the following facts in their Statement of Material Facts submitted pursuant to L.Civ.R. 56.1.   (ECF No. 57-1.) Plaintiff disputes these facts as follows.   (ECF No. 70-13.)

In her complaint, Plaintiff relies upon a class action lawsuit in the Superior Court of New Jersey, brought by women inmates complaining about discrimination and sexual harassment at

---

[2]  *See Chavarriaga v. Fodor, et al.*, Civil No. 10-5370 (MLC).

NJSP, to show that the Administrator of NJSP had agreed that women would no longer be confined at NJSP.  (ECF 56, Rev. Sec. Am. Compl. at ¶ 124.)  *See Jones v. Hayman*, 418 N.J. Super. 291 (N.J. Super. A.D. 2011).  Defendants argue, however, that the *Jones* case was dismissed with no dispositive findings rendered on the merits.  *See Jones*, 418 N.J. Super. at 302-04.  Plaintiff refutes Defendants' contention, arguing that the *Jones* plaintiffs ostensibly were successful because the women's section at NJSP was closed after the suit was filed, and the case had been remanded for a determination of an award of attorney fees for plaintiffs' counsel.  (ECF No. 70-15, Pl. Brief at 34-35.)  Defendants admit that only one unit at NJSP, which housed female inmates with general population classification status, was closed on September 3, 2008, but two other units at NJSP have remained in use since September 3, 2008 to house "close custody" status inmates who are female.  (ECF No. 57-1 at ¶¶ 2, 3, 4; Declaration of Nya Booth at ¶¶ 4-6, 10.)

Specifically, the female inmates housed in these two units include those inmates serving administrative detention or segregation, and those in transport from southern New Jersey halfway houses to the EMCF in northern New Jersey who had to stop at NJSP midway due to the regionalization of the NJDOC's transportation system.  (*Id.*, ¶ 5 and Booth Decl. at ¶¶ 5-6.)  Plaintiff disputes this fact, noting that she had been transported by the NJDOC from a halfway house in Paterson, New Jersey to a halfway house in Camden, New Jersey without making any stops at NJSP.  (ECF No. 70-13 at ¶ 5A.)

Defendants state that the cells in South-1-GG unit at NJSP are "virtually identical in terms of physical layout and appearance."  (ECF No. 57-1 at ¶ 6, Booth Decl. at ¶ 8.)  Defendants further state that no male inmates are housed in South-1-GG unit while female inmates are housed there, and no male inmates have access to pass through or enter the unit.  Additionally, there is a

shower in South-1-GG unit so no inmate housed there is required to leave the unit to shower.   (*Id.*, ¶¶ 7, 8, Booth Decl. at ¶¶ 9, 11.)   Plaintiff disputes these facts insofar as Plaintiff was required to travel outside the unit in shackles and naked to shower in another unit, and that while she was naked she was exposed to other male officers and inmates.   (ECF No. 70-13 at ¶¶ 7, 8.)

The NJDOC has policies and procedures regarding clothing provided to inmates, which are codified at N.J.A.C. 10A:14-5.1 *et seq*.   (ECF No. 57-1 at ¶ 10, Declaration of Karin M. Burke at ¶ 3, Exhibit A.)   Inmates are not deprived of clothing or left naked for a "prolonged period of time" unless they are on suicide watch, and even then the inmate would be given a gown to wear or blanket for covering.   (*Id.* at ¶¶ 11, 12, Declaration of Herbert Kaldany, DO at ¶ 12.)   Plaintiff alleges that this policy was not followed during the times she was confined at NJSP in South-1-GG unit.   (ECF No. 70-13 at ¶¶ 10, 11, 12.)

The water flow can be shut on and off in South-1-GG unit, Cell 12, at NJSP.   If an inmate in Cell 12 has water flow in her toilet, then she also would have access to drinking water from the sink in her cell.   Likewise, if there was no water flow in the sink, there also would be no water running in the toilet.   (ECF No. 57-1 at ¶¶ 13, 14, 15, Declaration of David Hoffman at ¶¶ 4, 6-9.) Plaintiff disputes these factual allegations and states that Cell 12 had broken plumbing during the times she was housed there and that she could not access water from the sink in Cell 12.   She further alleges that the toilet could "contain a residuum of water" in the bowl even though there was no running water from the sink.   (ECF No. 70-13 at ¶¶ 14, 15.)

There was no diagnosis or treatment of Plaintiff for Post-Traumatic Stress Disorder ("PTSD") while she was confined at NJDOC facilities.   The NJDOC has no record that Plaintiff notified NJDOC medical staff of her pre-existing PTSD condition at the time of her admission to

NJDOC custody.   (ECF No. 57-1 at ¶ 16, Kaldany Decl. at ¶¶ 13, 16-17.)   Defendants further note that Plaintiff could not produce any evidence of her alleged PTSD condition in a separate lawsuit and the action was dismissed accordingly.   *See Chavariagga v. Ross Pub. Affairs Group, Inc.*, No. A-5339-09T3, 2011 WL 2713466, *2, 7-8 (N.J. Super. A.D. Jul. 14, 2011).   (ECF No. 57-1 at ¶ 17.)

Plaintiff disputes these facts and asserts that, when she entered NJDOC custody, she was not aware that her symptoms at that time may have signified that she suffered from PTSD. Moreover, Plaintiff alleges that her separate state court lawsuit was dismissed on the pleadings, and that she had no duty to submit an expert report with her pleadings at that time.   Furthermore, Plaintiff's allegation of PTSD related to her damage claim in her state court action.   She finally states that, pursuant to NJDOC policy, Garrett House "refused to allow an independently retained clinical psychologist licensed in New Jersey to examine" her.   (ECF No. 70-13 at ¶¶ 16, 17.)

## III.   DISCUSSION

### A.   Motion to Dismiss Standard

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'"   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).   Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).   The court, however, must disregard any conclusory allegations proffered in the complaint. Id. For example, the court is free to ignore legal conclusions     or     factually     unsupported     accusations     which     merely     state     that

"the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal citation omitted). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

**B.  Summary Judgment Standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(a); *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits ... or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Fed.R.Civ.P.* 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986).   More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.   *Id.* at 248–49.   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   *Id.* at 247–48.   "To be material, a fact must have the potential to alter the outcome of the case."   *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012) (citation omitted).

C.   Claims Against Defendants Lanigan and Chiesa

Defendants first argue that Plaintiff's claims against Defendants Lanigan and Chiesa should be dismissed pursuant to Rule 12(b)(6), or alternatively, that summary judgment should be granted in their favor.   Defendants' arguments center on Plaintiff's failure to allege, or demonstrate, specific facts establishing personal involvement by these two supervisory Defendants.   The Court will dismiss Plaintiff's claims under the Rule 56 summary judgment standard because her claims are based impermissibly upon the theory of respondeat superior.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or supervisor liability.   *See Iqbal*, 556 U.S. at 676.   "In order for liability to attach under § 1983, a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights."   *Fears v. Beard*, F. App'x 78, 81 (3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Bayete v. Ricci*, 489 F. App'x 540, 543 (3d Cir. 2012) (supervisor liability requires a showing of personal involvement in the alleged wrongs).   "[L]iability cannot be predicated solely on the operation of respondeat superior," rather, a plaintiff must show personal involvement "through

12

allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted); *see also Walsifer v. Borough of Belmar*, 262 F. App'x 421, 425 (3d Cir. 2008).   In this case, Plaintiff's claims against Defendants Lanigan and Chiesa appear to be based primarily on a supervisor liability theory in their capacities as Commissioner of the Department of Corrections and Attorney General of the State of New Jersey, respectively.   (ECF No. 56, Rev. Sec. Am. Compl. at ¶¶ 10, 11 and 109.E.)   This is insufficient predicate on which to state a § 1983 claim against Defendants Lanigan and Chiesa.   Indeed, Plaintiff's claims could be dismissed under Rule 12(b)(6) for this reason alone; however, in light of the evidence discussed by the parties, this Court elects to analyze this claim under a summary judgment rubric.

For instance, Plaintiff points to evidence in the record describing how these supervisory Defendants actively or affirmatively violated her constitutional rights.   This evidence fails to show that either Lanigan or Chiesa expressly directed the deprivation of Plaintiff's constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.   At best, Plaintiff contends that these Defendants became aware of Plaintiff's three incidents of confinement at the NJSP via two letters sent by Plaintiff's counsel informing Lanigan and Chiesa of the incidents.   These letters were sent on January 1, 2012 and January 16, 2012, after those incidents had taken place and Plaintiff had been returned to Garrett House.   (ECF Nos. 70-5 and 70-6, Declaration of Frederic J. Gross at Exhibits D and E.)   However, participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances.   *See Rode*, 845 F.2d at 1208 (finding the receipt of a grievance

13

insufficient to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam) (inappropriate response to grievances does not establish personal involvement required to establish supervisory liability).

Further, Plaintiff cannot show that Defendants Lanigan and Chiesa were put on notice about an alleged ongoing constitutional violation. As stated above, the two letters sent to Defendant Lanigan post-date the three incidents at issue and Plaintiff was never returned to NJSP after the third incident in December 2011. In fact, no similar violations occurred from December 23, 2011 through March 25, 2013, when Plaintiff was released from custody upon completion of her prison sentence. Thus, there were no "ongoing constitutional violations" to remediate. Accordingly, this Court will grant summary judgment in favor of Defendants Lanigan and Chiesa with respect to Plaintiff's claims based on 42 U.S.C. §§ 1983, 1985 and N.J.S.A. 10:6-2.c and New Jersey common law.[3]

Finally, Plaintiff argues that she is not suing these Defendants solely under a theory of respondeat superior. Rather, Plaintiff contends that these Defendants are liable under 42 U.S.C. § 1986 because they received written notice of the "wrongs inflicted upon" Plaintiff and "did absolutely nothing to prevent recurrences." (ECF No. 70-15, Plaintiff's Brief on Cross-Motions at 8-9.) Plaintiff specifically argues that § 1986 rebukes those persons who have knowledge of wrongs conspired to be done and fail to prevent or to aid in preventing any such wrong mentioned in § 1985, and that § 1985(c) "condemns conspiracies to deprive persons of civil rights." (ECF No. 70-15 at 9.) However, it is notable that § 1986 implicates ongoing constitutional violations,

---

[3] State law claims brought under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, ("NJCRA"), have been held to be analogous to 42 U.S.C. § 1983 and any affirmative defenses and immunities available under § 1983 are likewise available under the NJCRA. *See Ramos v. Flowers*, 429 N.J. Super. 13 (App. Div. 2012).

and as discussed above, Plaintiff cannot demonstrate Defendants' knowledge of ongoing violations.   Instead, Plaintiff points only to letters noticing Defendants of after-the-fact incidents. Moreover, no further incidents occurred after December 23, 2011, and Plaintiff was never returned to NJSP while she remained in NJDOC custody until her release on March 25, 2013.   Thus, Plaintiff cites no evidence pertaining to these Defendants having actual knowledge of a retaliatory conspiracy necessary to support a conspiracy claim under § 1985(c).

Therefore, summary judgment is granted in favor of Defendants Lanigan and Chiesa as to all claims asserted against them in this action.

D.   Claims Alleging Eighth Amendment Violations

In her second and third causes of action against Defendant Brown and unidentified SID personnel, Plaintiff alleges that she was deprived of clothing and potable water on three separate occasions when she was confined at the NJSP South-1-GG unit, Cell 12.   Each of these incidents lasted for three days or less at a time.   Defendants argue that Plaintiff's claims in this regard should be dismissed pursuant to Rule 12(b)(6) because Plaintiff cannot show that Brown was personally involved in the alleged violations of Plaintiff's constitutional rights.   (ECF No. 57-6, Def. Brief at 14-15.)   As an initial matter, the Court initially finds that there are no allegations to implicate Brown's involvement in two of the three periods of Plaintiff's confinement at NJSP. Thus, any claims asserted against Brown involve only Plaintiff's detention at NJSP from May 31, 2011 through June 2, 2011.

With regard to the May 31, 2011 through June 2, 2011 incident, however, Plaintiff alleges that Brown ordered that Plaintiff's clothing be removed on Plaintiff's arrival at NJSP on May 31, 2011, and did not provide any covering to Plaintiff during the remainder of her confinement.

15

During these three days, Plaintiff alleges that she was exposed to male inmates and correctional staff.   Plaintiff further alleges that she was not merely left naked and exposed in her cell, but that she was paraded from her cell, naked and shackled, in view of any male inmate or staff nearby, to a shower room in another unit despite the fact that showers were available in South-1-GG unit. Also during this time period, Plaintiff alleges that Brown placed Plaintiff in Cell 12 at South-1-GG unit, upon consultation with SID officers, knowing that the cell was "condemned" and did not have a faucet to provide running water.   Plaintiff alleges that she was denied any water upon request and purportedly was told that she could drink from the toilet bowl in her cell.   Plaintiff asserts that these violations constitute infliction of cruel and unusual punishment in violation of Plaintiff's Eighth and Fourteenth Amendment rights.

The Constitution mandates that prisoners be afforded "humane conditions of confinement;" however, "[t]he Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal citations omitted).   "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'"   *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To establish an Eighth Amendment violation, "an inmate must allege both an objective element-that the deprivation was sufficiently serious-and a subjective element-that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294  (1991)).   A deprivation is "sufficiently serious" when it results in the denial of "the minimal civilized measure of life's necessities." *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (citing

*Farmer*, 511 U.S. at 834).  "This requires an inmate to show that he is incarcerated under conditions posing a substantial risk of harm ...."  *Id.* (internal quotations omitted).  Furthermore, "[a] prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to the inmate's health or safety."  *Ham v. Greer*, 269 F. App'x 149, 151 (3d Cir. 2008) (citing *Farmer*, 511 U.S. at 834).

Federal courts have held that the Eighth Amendment requires that "[w]ater that is suitable for drinking and bathing" be supplied to inmates.  *Bellezza v. Fischer*, No. 05 Civ. 98 (DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct.24, 2006); *Cruz v. Jackson*, No. 94 Civ. 2600 (RWS), 1997 U.S. Dist. LEXIS 1093, at *19–20, 1997 WL 45348 (S.D.N.Y. Feb. 4, 1997) ("Because contaminated water may pose serious health problems, an allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component of an Eighth Amendment claim."); *Donahue v. Conn. Dep't of Corr.*, No. 3:11–cv–656 (CFD), 2011 U.S. Dist. LEXIS 105447, at *4 (D.Conn. Sept. 16, 2011) ("potable water constitutes a basic human need").  However, while a consistent supply of contaminated drinking water may constitute an Eighth Amendment violation, "[a]n isolated serving of rusty water would not give rise to an Eighth Amendment claim."  *Cruz*, 1997 U.S. Dist. LEXIS 1093 at *7, 1997 WL 45348; *see also Liffiton v. Kiszewski*, No. 09–CV–994A(F), 2010 WL 2869570, at *5 (W.D.N.Y. July 1, 2010) ("limited exposures [to unconstitutional conditions] do not constitute due process violations").

In this instance, Plaintiff has pled that Defendant Brown and unidentified officers deprived Plaintiff of water and clothing for a three-day period.  Even assuming that these facts are true, the alleged deprivations fail to satisfy the objective component necessary to state an Eighth

17

Amendment claim.[4]  Federal courts have consistently held that isolated denials of necessities in prison for a short duration - for up to nine days - do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment.  *See, e.g.*, *Banks v. Mozingo*, 423 F. App'x 123, 127–28 (3d Cir. 2011) (finding that denial of basic necessities such as running water, a mattress, clothes and a blanket on several separate occasions did not rise to the level of an Eighth Amendment violation); *Adderly v. Ferrier*, 419 F. App'x 135, 139–40 (3d Cir. 2011) (finding that denial of clothing, toiletries, legal mail, mattress and shower for seven days did not constitute Eighth Amendment violation); *Clemens v. Lockett*, Civil Action No. 11-1482, 2013 WL 6230648, *4 (W.D. Pa. Dec. 2, 2013) (finding that denial of showers for nine days was not an Eighth Amendment violation); *Sloan v. Sobina*, Civil No. 09-100 Erie, 2011 WL 5304137, *6 (W.D. Pa. Oct. 11, 2011) (finding no Eighth Amendment violation where plaintiff was deprived of water, hygiene, and clothing for a period of seven days); *Schaeffer v. Schamp*, Civ. No. 06–1516, 2008 WL 2553474, at *6 (W.D.Pa. June 25, 2008) (holding that plaintiffs "claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day" were insufficient to constitute an Eighth Amendment violation); *Lane v. Culp*, 2007 WL 954101, at *4–5 (W.D.Pa. Feb.15, 2007) (holding that denial of running water, clothing and bedding for seven days did not rise to the level of a constitutional violation); *Allebach v. Sherrer*, Civ. No. 04–287, 2005 WL 1793726, at *4

---

[4]   For this reason, the Court would reach the same conclusion applying the summary judgment standard.  While Plaintiff points to evidence supporting her contention that Cell 12 suffered from plumbing problems (namely, Cell 12 was "condemned" on January 19, 2010 and January 26, 2010, for plumbing and faucet problems, and a work order report, dated June 9, 2012, also reveals that the sink in Cell 12 was not working and that drinking water was not available, *see* ECF No. 70-2, Gross Decl. at Exhibit A), that she experienced this deprivation for a limited duration of time fells her Eighth Amendment claims.

(D.N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six days was not cruel and unusual punishment under the Eighth Amendment when evidence showed that the plaintiff's nutritional need were met and that he was afforded living and hygienic conditions which were not injurious to him).  *See also Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995)  (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

Thus, this Court is constrained to find that the three isolated incidents of very short duration in which Plaintiff allegedly was denied clothing and drinking water (one day on April 8, 2010, three days from May 31, 2011 to June 2, 2011, and two days on December 22, 2011 to December 23, 2011) do not rise to the level of an Eighth Amendment violation.  Accordingly, these Eighth Amendment claims fail to state a cognizable claim of a constitutional deprivation that would entitle Plaintiff to relief, and the claims are dismissed with prejudice against Defendant Brown and all named and unidentified Defendants in this action.

E.   Due Process Claims

Plaintiff also asserts that she was denied substantive due process when she was removed from Garrett House and confined at NJSP, which is a maximum security prison for men only. This claim is asserted against Defendants Brown, John Doe #1, John Doe #2, and unidentified SID personnel.  (ECF No. 56, Rev. 2d Am. Compl. at ¶109.A.)  Defendants contend Plaintiff fails to state a cognizable claim in this regard, and urge the Court to dismiss pursuant to Rule 12(b)(6). (ECF No. 57-6, Def. Brief at 16-21.)

Certain fundamental rights are substantively protected by the Fourteenth Amendment's due process clause. *See White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990). To establish a substantive due process claim under the Fourteenth Amendment, a plaintiff must demonstrate: 1) an actor engaged in conduct under color of state law; 2) a deprivation of a protected liberty interest by that conduct; and 3) the deprivation shocks the conscience. *Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013); *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (holding that a claim alleging a substantive due process violation requires a showing of behavior that can "properly be characterized as arbitrary, or conscience shocking"); *see also Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct."). As discussed above, this Court has determined that Plaintiff's claims regarding the condition of her confinement at NJSP did not rise to the level of an Eighth Amendment violation.[5] Consequently, to the extent that Plaintiff's substantive due process claim is not covered by her Eighth Amendment claims, this Court finds nothing in the allegations that would suggest Defendants' conduct in confining Plaintiff at NJSP for three days or less on three isolated occasions that would "shock the conscience." *See Fantone v. Herbik*, 528 F. App'x 123, 129 (3d Cir. 2013) (holding that a prisoner's detention in an isolation unit for 35 days did not

---

[5] If a constitutional claim is covered by a specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *Cooleen v. Lamanna*, 248 F. App'x 357, 361 (3d Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); *see also Parkell v. Danberg*, --- F. Supp.2d ----, 2014 WL 788856, *11 (D. Del. Feb. 25, 2014); *Graham v. Poole*, 476 F.Supp.2d 257 (W.D.N.Y. 2007) (holding that when a prisoner's "deliberate indifference claim is covered by the Eighth Amendment, the substantive due process claims are duplicative" and thus "the substantive due process claims [should be] dismissed") (quotations and citations omitted)).

"shock the conscience" necessary to establish a substantive due process violation).

Moreover, an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level, security classification, or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976).   The custody placement or classification of state prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.   Indeed, the Supreme Court has recognized that prison officials have a penological interest in the housing placement of its inmates and "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002); *Thomaston*, 519 F. App'x at 119.   Thus, courts generally will not interfere with prison administrative matters and will afford significant deference to judgments of prison officials regarding prison regulation and administration.   *Id.*; s*ee also, Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators.").   Therefore, a convicted inmate, such as Plaintiff was at all relevant times, has no liberty interest arising under the Due Process Clause itself in remaining in a prison facility of his or her choosing.

Further, to the extent that Plaintiff is alleging that her confinement at NJSP, a men only facility, violated procedural due process in violation the Fourteenth Amendment, this claim also fails.   Procedural due process protection "for a state created liberty interest ... is limited to those

situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).   With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *see also Sandin*, 515 U.S. at 480.   Thus, even if Plaintiff had been placed in a halfway house before being returned to prison, this Court "must compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999) (finding that "[s]ince an inmate is normally incarcerated in prison," his return to prison from a halfway house did "not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest").   Here, Plaintiff's confinement as a convicted prisoner in an isolated cell at NJSP, for three days at most on one occasion and one day on two other occasions, while she was in transit from Garrett House to the EMCF in Clinton, New Jersey, does not constitute an atypical or significant hardship.   *See Turner v. Atty. Gen. Pennsylvania*, 505 F. App'x 95, 99 (3d Cir. 2012).

Plaintiff argues, however, that her placement in NJSP in Cell 12 of South-10-GG unit, which was designated as a psychiatric unit, violated her due process rights because confinement in a psychiatric unit must be preceded by a professional mental health assessment.   In addition, Plaintiff states that her transfer to NJSP on May 31, 2011, without the proper paperwork, constitutes a "kidnapping" in violation of due process.   Finally, Plaintiff argues that prior state

litigation in *Jones v. Hayman*, 418 N.J. Super. 291 (N.J. Super. A.D. 2011), resulted in a decision that prohibits the NJDOC from transferring female prisoners to NJSP, and thus, her transfer to NJSP violated due process.[6]

In *Jones v. Hayman*, four women prisoners brought a class action lawsuit against the NJDOC alleging discriminatory and unconstitutional conditions of confinement.   These four women were among 40 female inmates at EMCF, New Jersey's sole women's prison, who were transferred to NJSP, a maximum security men's prison, in order to reduce the overall inmate population at EMCF.   *Jones*, 418 N.J. Super. at 296-98, 303.   On January 22, 2008, the parties entered into a consent order in which the NJDOC agreed not to transfer any female inmates from the EMCF to Section-1-EE at the NJSP.   The consent order also permitted the NJDOC to transfer female inmates from the EMCF to the administrative segregation unit or the Stabilization Unit of NJSP so long as they were later returned to EMCF.   On July 21, 2008, the Superior Court of New Jersey, Chancery Division, granted plaintiffs' motion for preliminary injunctive relief and for class certification.   On September 3, 2008, all female inmates at NJSP, including the class members, were returned to EMCF.   On May 18, 2009, the trial court dismissed the action as moot and denied plaintiffs' application for counsel fees.   (ECF No. 70-10.)   Plaintiffs appealed, and the Appellate Division held that there was a "basis in law" for the relief secured by plaintiffs and that plaintiffs were entitled to fees under the "catalyst theory" because their lawsuit had achieved the desired result and brought about a voluntary change in defendants' conduct.   *Jones*, 418 N.J.

---

[6]  The Court takes judicial notice of the Jones decision, and considers the fact of the decision in connection with its ruling on Defendants' motion to dismiss.  *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999) (federal court, on motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

Super. at 308-310.

While this Court disagrees with Defendants that the *Jones* lawsuit made no dispositive findings on the merits, there is no support in the *Jones* action to buttress Plaintiff's denial of due process claim. Notably, the *Jones* lawsuit does not preclude the NJDOC from temporarily housing female inmates at NJSP in designated segregated units so long as the women prisoners are returned to EMCF. That is precisely the situation that occurred with respect to Plaintiff. She was a convicted prisoner in transit to EMCF who was housed temporarily at a segregated unit at NJSP for three days or less before being returned to EMCF.

Likewise, Plaintiff's equal protection claim fails. In order to state a claim, Plaintiff is required to allege that her transfers to, and housing at, NJSP were intentionally discriminatory. *See Bush v. Rendell*, 533 F. App'x 141, 145 (3d Cir. 2013). However, Plaintiff alleges that her transfers from Garrett House to NJSP were prompted by disciplinary infractions and she was merely confined at NJSP for a short duration in transit to EMCF. Thus, there is a rational basis for Plaintiff's transfers, and her equal protection claim is dismissed for failure to state a claim.

Therefore, because Plaintiff's Fourteenth Amendment due process and equal protection claims do not state a cognizable claim of a constitutional deprivation that would entitle Plaintiff to relief, these claims are dismissed as against all named and unidentified Defendants in this action.

F.   Strip Search Claim

In her fourth cause of action, Plaintiff complains about the strip search conducted by Jane Doe upon her arrival at NJSP from Garrett House on May 31, 2011. Plaintiff alleges that Jane Doe conducted a body cavity search "with the purpose of inflicting severe pain and humiliation upon plaintiff" and that the strip search was an invasion of her privacy and "technical rape."

(ECF No. 56, Rev.2d Am.Compl. at ¶ 109.D.)   This claim is not a cognizable constitutional violation.

The Supreme Court recently has held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something.   *Florence v. Bd. of Chosen Freeholders of Cnty. Of Burlington*, --- U.S. ----, 132 S.Ct. 1510, 1516-17, 182 L.Ed.2d. 566 (2012) (holding that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities.... The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials," so that, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to their expert judgment in such matters.")

In this case, a body cavity search was conducted upon Plaintiff upon her arrival from Garrett House to the NJSP as a routine security measure.   Plaintiff does not allege any facts to show that "the strip search was so outside the scope of a reasonable search policy that it would rise to the level of a Fourth Amendment violation."   *Aruanno v. Allen*, 498 F. App'x 160, 162-63 (3d Cir. 2012) (citing *Florence*, 132 S.Ct. at 1517).   Therefore, this claim is dismissed with prejudice, pursuant to Rule 12(b)(6), for failure to state a cognizable claim of a constitutional deprivation.

G.   Conspiracy Claims

Plaintiff also alleges that Defendants NJDOC, Lanigan, Marcus Wair, and various unidentified SID personnel are liable under 42 U.S.C. § 1983, § 1985(3) and § 1986, for conspiring to have Plaintiff falsely charged with disciplinary infractions and to withhold remittance of

sentence credits after Plaintiff was found not guilty of failure to provide a urine sample. Defendants move to dismiss these claims pursuant to Rule 12(b)(6).   (ECF No. 57-6, Def. Brief at 23-25.)

To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal citations omitted).   To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).   The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).   The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted).

Finally, Section 1986 of Title 42 states that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured."   Thus, a § 1986 claim is predicated on defendant's actual knowledge of a § 1985 violation. *Muhammad v. Dempsey*, 531 F. App'x 216, 219 n.4 (3d Cir. 2013) (citing *Clack v. Clabaugh*, 20 F.3d 1290,

26

1295 (3d Cir. 1994)).

In her revised second amended Complaint, Plaintiff alleges no facts to support a claim for a conspiracy. She simply states in a conclusory manner that Defendants Wair and unidentified SID personnel conspired to deprive Plaintiff of her rights due to a vendetta against Plaintiff for having filed a lawsuit against the Somerset County Prosecutor's Detectives. Similarly, there are no factual allegations regarding Defendant Brown to sustain a conspiracy claim. For these reasons, Plaintiff's conspiracy claims are dismissed, as well as the claim pursuant to § 1986, with regard to all named and unidentified Defendants. *See Heath v. Shannon*, 442 F. App'x 712, 718 (3d Cir. 2011) (per curiam) (holding that a claim under § 1986 cannot survive without a valid § 1985 claim) (citing *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).

This Court would reach the same conclusion applying the summary judgment standard. Plaintiff bases her conspiracy claims on allegations that she was removed from the Garrett House and confined at NJSP based on false disciplinary infractions, and that her credits were not restored even after she prevailed in her disciplinary hearings. The facts show, as conceded by Plaintiff, that Plaintiff was afforded the requisite due process as outlined in *Wolff v. McDonell*, 418 U.S. 539, 558 (1974). Plaintiff did have disciplinary hearings in which she was found not guilty of the allegedly false charges.[7] The facts further show that Plaintiff's credits were restored despite

---

[7]   It is well established that the act of filing a false disciplinary charge does not itself violate a prisoner's constitutional rights even if it may result in the deprivation of a protected liberty interest. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Thus, no constitutional violation results from being falsely accused of misconduct where the prisoner is provided due process. *See id.* at 952-53 (holding that "the mere filing of [a false]charge" does not constitute a cognizable claim under § 1983 so long as the inmate

27

Plaintiff's claims otherwise.   This evidence is confirmed in this Court's decision in Plaintiff's separate habeas action seeking restoration of credits.   *See Chavarriaga v. Lanigan*, Civil No. 12-7700 (MAS), 2013 WL 1091095, *5 (D.N.J. Mar. 15, 2013).   Indeed, the facts in that case illustrate that, on December 11, 2012, counsel for the NJDOC provided a worksheet showing that Plaintiff's work and minimum credits were correctly posted and that commutation credits had been restored.   *Id*.   This Court also notes that Plaintiff had declined parole, which was scheduled for February 20, 2013, and asked to serve her maximum term concluding on March 25, 2013.   *Id*. at *3.   Thus, given the facts that Plaintiff received disciplinary due process, declined her parole and chose to serve her full sentence, thereby accepting the determination of credits, and was released from prison on March 25, 2013, her conspiracy claims regarding false disciplinary actions and non-remittance of credits are rendered moot.   In short, this Court finds no factual or legal basis for Plaintiff's conspiracy claims, and the Defendants would be entitled to summary judgment on the conspiracy claims.

H.   Claim Against NJDOC

This Court also finds that the Complaint must be dismissed with respect to the NJDOC based on Eleventh Amendment immunity.   The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."   As a general rule, a suit by private parties seeking to impose a liability that must be paid from public funds in a state

---

"was granted a hearing, and he had the opportunity to rebut the unfounded or false charges"); *see also Smith v. Messinger*, 293 F.3d 641, 653-54 (3d Cir. 2002); *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012).   In this case, there is no dispute that Plaintiff received disciplinary due process as she concedes she prevailed in her administrative disciplinary hearings regarding the alleged false disciplinary charges.

treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See, e.g., Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Rivers v. SCI Huntingdon Prison*, 532 F. App'x 91, 93 (3d Cir. 2013).   Thus, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against that state or any one of its agencies. *Id.*   Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 340–41 (1979); *Ellington v. Cortes*, 532 F. App'x 53, 2013 WL 3822161, *2 (3d Cir. 2013).

The NJDOC is a state entity or agency of the State of New Jersey. *See* N.J. Stat. Ann. 30:1B (establishing "in the Executive Branch of the State Government a principal department which shall be known as the Department of Corrections.").   Therefore, the NJDOC is entitled to immunity from suit under the Eleventh Amendment.

Plaintiff argues that this immunity does not extend where injunctive relief is sought. However, Plaintiff's claim for injunctive relief was rendered moot when she was released from prison on March 25, 2013.

I.   Plaintiff's Motion for Sanctions

Plaintiff filed a cross-motion under Fed.R.Civ.P. 37(d), seeking sanctions against defense counsel for failure to attend Plaintiff's scheduled deposition of Defendants' declarants whom Defendants relied upon in support of their motion for summary judgment.   Plaintiff's counsel states that, on September 19, 2013, he submitted a Rule 56(d) declaration (ECF No. 58) seeking to take short depositions of those persons whose declarations were submitted by Defendants in support of their motion for summary judgment, namely, (1) David Hoffman and (2) Herbert

Kaldany.   In addition, Plaintiff's counsel sought the deposition of (3) Ms. Perry, employed by the NJDOC Office of Program and Community Services, regarding Plaintiff's transfer from Millicent Fenwick House to Garrett House; and (4) Melinda Haley, legal assistant to Defendant Lanigan, regarding her receipt and handling of Plaintiff's communications to Lanigan.

Plaintiff's counsel asserts that defense counsel refused to produce these individuals for deposition, and then failed to appear for the deposition scheduled on October 25, 2013.   Plaintiff's counsel further states that defense counsel purportedly refused to appear for the deposition because the deposition notice was ineffective due to Plaintiff's failure to serve the NJDOC with the Complaint.   (ECF No. 70-15, Pl. Brief at 3.)

In opposition to Plaintiff's cross-motion for sanctions, Defendants submitted the declaration of Lucy E. Fritz, Deputy Attorney General assigned to the Corrections and State Police Section of the Division of Law, which provides legal representation to the NJDOC and its employees.   (ECF No. 75-1.)   Ms. Fritz relates that none of the individuals whose depositions were sought by Plaintiff are named defendants in this action.   (*Id.*, ¶ 8.)   Ms. Fritz further states that Plaintiff sent the deposition notice to defense counsel at the close of business on Friday, October 18, 2013, noticing the depositions for October 25, 2013.   Defense counsel did not receive the deposition notice until October 21, 2013, whereupon, counsel immediately informed Plaintiff's counsel that these four individuals could not be compelled to attend a deposition, as non-parties to the lawsuit, absent a subpoena.   Defense counsel then directed Plaintiff's counsel that if he wished to pursue the deposition, he would need to subpoena these individuals.   (*Id.*, ¶¶ 9, 10.)   Ms. Fritz also attests that defense counsel informed Plaintiff's counsel that neither defense attorney Moratti nor Fritz were available on October 25, 2013, due to prior commitments in other

cases that could not be rescheduled on short notice.  (*Id.*, ¶ 11.)  Finally, Ms. Fritz informed

Plaintiff's counsel that the NJDOC has not been properly served and was not yet a party to this

case.  (*Id.*, ¶13.)

On October 22, 2013, defense counsel wrote a letter (ECF No. 63) to the Honorable

Tonianne J. Bongiovanni, U.S.M.J., requesting a conference call to resolve this discovery issue.

Ms. Fritz also called Judge Bongiovanni's chambers with regard to this discovery dispute, but

Judge Bongiovanni declined to intervene.  (ECF No. 75-1, ¶14.)  On October 24, 2013,

Plaintiff's counsel contacted Ms. Fritz to ascertain whether the deposition of October 25, 2013

would go forward.  Ms. Fritz responded that no one would be attending the deposition for the

reasons articulated previously.  (*Id.*, ¶15.)

Despite this knowledge concerning the deposition, Plaintiff's counsel attended the

deposition and placed the discovery dispute on the record at the deposition.  (ECF No. 70-12.)

Plaintiff now seeks sanctions under Rule 37, namely, dismissal of Defendants' summary

judgment motion, attorney fees and costs incurred for the deposition and transcript, and

disqualification of defense counsel in further participation in this action.  (ECF No. 70-15, Pl.

Brief at 7.)

Rule 37(d) states that the district court may, upon motion, impose sanctions if a party fails

to appear for a deposition after being served with proper notice.  Defendants argue that sanctions

are not appropriate here because the deponents were not parties to the lawsuit, and because the

NJDOC was never properly served with the complaint in this case.

"In deciding whether sanctions that 'deprive a party of the right to proceed with or defend

against a claim' are appropriate, the Court considers the [ ] factors set forth by the Third Circuit in

*Poulis v. State Farm Fire & Cas. Co.*."   *Hayes v. Nestor*, Civil No. 09–6092 (NLH/AMD), 2013 WL 5176703, *3-4 (D.N.J. Sep. 12, 2013).   The factors set forth in *Poulis* are:

> (i) the extent of the party's personal responsibility;
>
> (ii) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> (iii) a history of dilatoriness;
>
> (iv) whether the conduct of the party or the attorney was willful or in bad faith;
>
> (v) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
> (vi) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868–71 (3d Cir. 1984).   "Because an order of dismissal is a harsh remedy that deprives a party of its day in court, [the Third Circuit has] stated that 'a court should resort to dismissal only in extreme cases, as the policy of the law is to favor the hearing of a litigant's claim on the merits.'"   *Bush v. Dept. of Human Services*, No. 11–4444, 2012 WL 2107982, at *2 (3d Cir. June 1, 2012) (quoting *Spain v. Gallegos*, 26 F.3d 439, 454 (3d Cir. 1994)).

This Court finds that none of the relevant *Poulis* factors apply in this case to warrant imposition of sanctions against Defendants.   First, Plaintiff's counsel was made aware that the October 25, 2013 deposition date was not open for defense counsel due to commitments in other cases that could not be rescheduled on short notice, regardless of whether the requested deponents would be produced, yet counsel went forward with the deposition anyway.   Further, counsel gave short notice, essentially less than one week, for the proposed deposition of four individuals. Thus, Plaintiff's counsel has not demonstrated prejudice or lack of responsibility in this instance.

There also is no indication that defense counsel was dilatory or acted in bad faith in declining to attend or produce the proposed deponents for deposition on such short notice and without subpoena.   Finally, the sixth factor weighs in favor of defense counsel, as demonstrated above, because their defenses have been determined by this Court to be meritorious.   Therefore, Plaintiff's motion for sanctions pursuant to Fed.R.Civ.P. 37(d) is denied.

J.   Plaintiff's Cross-Motion for Partial Summary Judgment

Plaintiff has cross-moved for partial summary judgment on her claims against Defendants, Lanigan, Brown and the NJDOC.   Plaintiff asserts that her supporting Rule 56.1 Statement establishes that Defendant Brown knowingly and intentionally deprived Plaintiff of clothing and placed Plaintiff in a "condemned" cell.   She also asserts that her Rule 56.1 Statement establishes that Defendant Lanigan knew or should have known that a conspiracy was "afoot."   (ECF No. 70-15, Pl. Brief at 37-38.)   Plaintiff's cross-motion is denied because summary judgment is granted in favor of those Defendants, as discussed *supra*.

K.   Class Certification

As this Court has determined that Plaintiff fails to state any cognizable claim for relief under 42 U.S.C. § 1983, § 1985, § 1986, the U.S. Constitution, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.c, and other New Jersey state law,[8] and has granted Defendants' requests for summary judgment, there is no continuing basis on which to support Plaintiff's claims for class certification.   Accordingly, the motion is denied as moot.

---

[8] State law claims brought under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, ("NJCRA"), have been held to be analogous to 42 U.S.C. § 1983 and any affirmative defenses and immunities available under § 1983 are likewise available under the NJCRA. *See Ramos v. Flowers*, 429 N.J. Super. 13 (App. Div. 2012).

## **CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in favor of Defendants Lanigan and Chiesa with respect to Plaintiff's claim asserted against these Defendants. The remaining claims in the Complaint are dismissed with prejudice, for failure to state a claim , as against all Defendants who moved for dismissal under Fed.R.Civ.P. 12(b)(6). Further, because this Court has determined that Plaintiff fails to state a cognizable claim for relief with respect to the Eighth Amendment claims, Fourteenth Amendment due process and equal protection claims, her strip search claim, and her conspiracy claims alleging retaliatory disciplinary charges and non-remittance of credits, under 42 U.S.C. § 1983, § 1985, § 1986, the U.S. Constitution, and N.J.S.A. 10:6-2 and other New Jersey state law, the Complaint is dismissed with prejudice, in its entirety, as against all remaining named and unidentified Defendants, the NJDOC, Marcus Wair, Philip Sheppard, John Does ##1, 2, 3, and 4, Jane Doe, and the unidentified SID personnel. In addition, the Complaint is dismissed with prejudice as against Defendant NJDOC based on Eleventh Amendment immunity. Finally, Plaintiff's cross-motions for attorney sanctions and for partial summary judgment are denied for lack of merit, and her cross-motion for class certification is denied as moot. An accompanying Order is filed herewith.


MICHAEL A. SHIPP
United States District Court

34